UNITED STATES of America,
Appellant,

v.

Alex HODGE.

No. 00–3296.

United States Court of Appeals,
Third Circuit.

Argued Dec. 7, 2000.

Filed April 5, 2001.

Michael A. Rotker, Argued, Louis M. Fischer, United States Department of Justice, Criminal Division, Marc Osborne, United States Department of Justice, Washington, DC, Denise A. Hinds, Office of the United States Attorney, St. Croix, USVI, Counsel for Appellant.

Jomo Meade, (Argued), St. Croix, USVI, Counsel for Appellee.

Before MANSMANN and ALITO, Circuit Judges, and FULLAM, Senior District Judge.*

## OPINION OF THE COURT

ALITO, Circuit Judge:

The Virgin Islands police arrested appellee Alex Hodge after he discarded two bags of crack cocaine while fleeing from police. Following the arrest and based on the affidavit of officer Samuel Abra-

* The Honorable John P. Fullam, Senior District Judge for the Eastern District of Pennsylva- nia, sitting by designation.

ham, the police obtained a search warrant for Hodge's residence. Hodge moved to suppress the evidence obtained during execution of the warrant, arguing that Abraham's affidavit failed to establish a sufficient nexus between Hodge's criminal activity and his home. The District Court of the Virgin Islands granted Hodge's motion and the United States appealed. We hold that the affidavit supporting the warrant provided a substantial basis for finding probable cause to search Hodge's residence. Alternatively, we find that the officers who executed the search relied on the warrant in objective good faith. Accordingly, we reverse the order suppressing the evidence seized during the search of Hodge's home.

## I.

As the outcome of this case hinges on the sufficiency of the affidavit supporting the warrant, the underlying facts are largely taken from that affidavit. When the affidavit was executed, Abraham, the affiant, had been a detective with the Virgin Islands Police for seven years. Appendix at 187 (App.). During the previous three years, Abraham had been assigned to the High Intensity Drug Traffic Area Task Force on St. Croix (HIDTA). *Id.* Abraham had "participated in numerous investigations related to narcotics trafficking." *Id.*

On July 18, 1999, a confidential informant, who had previously "provided accurate and reliable information regarding criminal activity in St. Croix," informed a member of the HIDTA "that Alex Hodge was scheduled to make a delivery of crack cocaine on King Street, Frederiksted, St. Croix in the vicinity of [a particular store] at mid-day on July 19, 1999." *Id.* On July 19, 1999, Abraham and other members of the HIDTA were stationed on King Street near the identified store "and observed

Hodge exit a blue Mazda Protege and approach another individual" who was a known drug user. *Id.* at 187–88. "As he approached this individual Hodge" reached into the front "of his pants as if he were trying to retrieve something." *Id.* at 188. Abraham knew that sellers often store drugs in the front of their pants to conceal the drugs from law enforcement. *Id.*

Hodge fled when he saw the HIDTA agents. *Id.* The agents observed that Hodge had "what appeared to be a plastic sandwich bag in his" hand and that he dropped the bag near a trash can. *Id.* The agents apprehended Hodge and located two sandwich bags containing what appeared to be approximately ⅛ to ¼ kilogram of crack cocaine near the trash can. *Id.* Hodge was arrested on the spot. *Id.*

A member of the HIDTA team knew that Hodge resided in a home behind, but not attached to, the home at Number 48 White Bay, in the same city as the anticipated transaction—Frederiksted, St. Croix. *Id.* The agent also knew that Hodge drove a red Acura Integra as well as a rented, blue Mazda Protege. *Id.* HIDTA agents went to Hodge's suspected home and saw the red Integra parked there. Agents were also told by a resident of Number 48 that Hodge lived in the home behind Number 48. *Id.* at 188–89.

Based on this information, Abraham averred that Hodge resided in the home behind Number 48. *Id.* at 189. Abraham also averred that "[t]he quantity of cocaine involved in [Hodge's] attempted transaction and the circumstances surround[ing] his arrest indicate[d] that Hodge was possessing the crack cocaine with an intent to distribute it." *Id.* "Based upon [his] training and experience," Abraham stated that he knew "that persons involved in the receipt and distribution of controlled substances commonly keep within their resi-

dences evidence of their criminal activity."
*Id.*

Relying on Abraham's affidavit, a magistrate judge found probable cause to search Hodge's home. During the search, the police located approximately 600 grams of crack cocaine, over 30 grams of marijuana, a machine gun, and live ammunition. Hodge was indicted for possessing a firearm as a felon, possessing cocaine base with intent to distribute, and possessing cocaine base near a school, with intent to distribute. Prior to trial, Hodge successfully moved to suppress evidence seized during the search of his residence. The suppression order must be reversed if (1) the affidavit provided a substantial basis for finding probable cause to search Hodge's home or (2) the officers relied on the warrant in objective good faith.

## II. Probable Cause

### A.

█ In ruling on Hodge's motion to suppress, the District Court "did not question the facts contained in the affidavit" supporting the search warrant. *United States v. Jones,* 994 F.2d 1051, 1055 (3d Cir.1993). Accordingly, this Court's review of the suppression order is plenary. *Id.* at 1055 & n. 5; *see also United States v. Conley,* 4 F.3d 1200, 1204–05 (3d Cir. 1993). The Court sits like a district court and must, like the district court, give great deference to the magistrate judge's probable cause determination. *See United States v. Loy,* 191 F.3d 360, 365 (3d Cir. 1999); *Conley,* 4 F.3d at 1205.

█ A magistrate judge may find probable cause when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This Court must uphold the finding if the affidavit on which it was based provided a substantial basis for finding probable cause. *See id.* at 236; *Conley,* 4 F.3d at 1205; *Jones,* 994 F.2d at 1054, 1055. The Court need not determine whether probable cause actually existed, but only whether there was "a 'substantial basis' for finding probable cause." *Jones,* 994 F.2d at 1054; *see id.* at 1055, 1057. In making this determination, the Court confines itself "to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record." *Id.* at 1055. "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 1057–58 (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

### B.

█ Hodge argues, and the District Court agreed, that the affidavit failed to establish a nexus between Hodge's drug activity and Hodge's home and thus did not provide a sufficient basis for probable cause to search the home.

█ "[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." *Conley,* 4 F.3d at 1207. "Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide'" the fruits of his crime. *Jones,* 994 F.2d 1051 (quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir.1985)). A court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of

offense." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir.2000) (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir.1996)).

▮▮ In the present case, there is no direct evidence that drugs or drug paraphernalia would be located at Hodge's home. However, there was significant evidence from which the magistrate judge might reach that conclusion. Initially, the facts surrounding Hodge's arrest suggest that he was an experienced drug dealer who was operating a drug business. *Cf. Whitner*, 219 F.3d at 298. The amount of crack cocaine Hodge possessed indicated that he was "involved in selling drugs, rather than merely using them." *Id.* The fact that an informant, whose tip was corroborated by what actually happened, told the police that Hodge would be delivering cocaine at a particular time and location suggests both that Hodge's drug activities were organized and that Hodge was sufficiently involved in the drug trade that others knew of his activities. The prearranged nature of Hodge's dealing is likewise manifested by the fact that a known drug user was present to meet Hodge at the time of the anticipated transaction. That Hodge appeared to carry the drugs in the front of his pants as is common to avoid detection also suggests that he had experience in the drug trade. Finally, Hodge's use of a rental car, another common practice in the drug trade, indicates that the anticipated transaction was not an isolated deal, but part of a larger business. *See, e.g., United States v. $32,310.00*, 1988 WL 169271, at *7 (D.N.J. June 23, 1988) ("[E]vidence indicated that rental cars are often used to facilitate drug transactions since such cars are not subject to forfeiture."). All these facts combine to suggest that Hodge was an experienced and repeat drug dealer who would need to store evi-

dence of his illicit activities somewhere. *See Whitner*, 219 F.3d at 298.

It is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home. *See id.* at 297–98 (citing cases from other circuits); *United States v. Feliz*, 182 F.3d 82, 86–88 (1st Cir.1999) (finding "sufficient showing of probable cause" for search of "long-time, successful, drug trafficker['s]" apartment, despite lack of direct evidence linking apartment to trafficking); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir.1999) (noting "that in the case of drug dealers evidence is likely to be found where the dealers live") (quoting *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir.1996)) (emphasis omitted); *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C.Cir.1993) (per curiam) (upholding search of drug dealer's home and noting that "observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence"); *United States v. Williams*, 974 F.2d 480, 481–82 (4th Cir. 1992) (upholding search of known drug dealer's motel room despite lack of direct evidence that room was used in drug activities); *cf. Jones*, 994 F.2d at 1056 (cash, clothing, and firearms related to robbery were "the types of evidence likely to be kept in a suspect's residence"). A repeat drug dealer certainly has "the opportunity to conceal [drug-related evidence] in his home." *Whitner*, 219 F.3d at 298. In addition, such a person "logically could conclude that his residence is the best, and probably the only, location to store items such as records of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs

and cash, and large quantities of drugs to be sold." *Id.*

Hodge's home was in the same city where he was to make the anticipated drug delivery, rendering his home a more likely repository of his drug-related paraphernalia. *Cf. Jones*, 994 F.2d at 1057 ("[A]ll three defendants' homes were on St. Croix and thus were relatively near the site of the crime, making all of their homes a likely repository for evidence."). Moreover, as Hodge concedes, probable cause existed to arrest him on drug-related charges, Appellee's Brief at 12, again making it more likely that drug-related evidence would be stored at his home. *See Jones*, 994 F.2d at 1055–56 (While "probable cause to arrest does not automatically provide probable cause to search the arrestee's home," probable cause to arrest increases "the likelihood that [the arrestee's] residence contains evidence of the crime."); *cf. Conley*, 4 F.3d at 1207 (Previous arrests and convictions may help to establish probable cause.).

Finally, Abraham, an experienced police officer, believed that Hodge's home would likely contain evidence related to Hodge's drug activities. The magistrate judge was entitled to "give considerable weight to the conclusions of[this] experienced law enforcement officer[ ] regarding where evidence of a crime [was] likely to be found." *Whitner*, 219 F.3d at 296 (quoting *Caicedo*, 85 F.3d at 1192).

The cumulative evidence outlined above provided a substantial basis from which to infer that a search of Hodge's home would yield evidence of Hodge's drug-related activities. To be sure, "it would have been preferable if [Abraham] could have supplied more information linking [Hodge's home] to the criminal activity." *Whitner*, 219 F.3d at 299; see also *Jones*, 994 F.2d at 1057. Nonetheless, "the fact remains that he did bring the evidence ... to a

magistrate judge, who determined that there was probable cause to issue the warrant[ ]." *Jones*, 994 F.2d at 1057. "[A] 'grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.* (quoting *Ventresca*, 380 U.S. at 108, 85 S.Ct. 741). This preference for warrants further persuades us to hold that the magistrate judge had a substantial basis for finding probable cause.

### III.   Good Faith Exception

Even if a substantial basis for finding probable cause were lacking, however, the evidence obtained through the search would be admissible under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984).

### A.

██ The District Court found that the good faith exception did not apply in this case because Abraham's affidavit was so deficient as to render reliance on it unreasonable. We exercise plenary review over the District Court's conclusion. *See Loy*, 191 F.3d at 367 n. 5; *United States v. Williams*, 3 F.3d 69, 71 n. 2 (1993).

### B.

██ The good faith exception instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *Williams*, 3 F.3d at 74. "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate[ judge's] authorization.'" *Loy*, 191 F.3d at 367 (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405). The

mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. *Leon,* 468 U.S. at 922, 104 S.Ct. 3405; *Williams,* 3 F.3d at 74. Yet there are situations in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception. *Leon,* 468 U.S. at 922–23, 104 S.Ct. 3405. Our Court has identified four such situations:

(1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;

(3) [when] the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or

(4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Williams,* 3 F.3d at 74 n. 4 (citations omitted).

In the present case, Hodge makes no serious argument that the warrant was false,[1] that the magistrate judge abandoned his independent role, or that the warrant was fatally general. Instead, Hodge contends that the affidavit lacked the necessary indicia of probable cause. Specifically, Hodge asserts again that the affidavit failed to establish a sufficient nexus between Hodge's drug activity and his home. Hodge also asserts that Abraham knew of this deficiency and thus could not rely on the magistrate judge's finding of probable cause.

---

1. Hodge does argue that Abraham failed to include certain relevant facts in his affidavit; namely, that officers had "traveled to Hodge's residence after Hodge's arrest to inquire from [his neighbor] whether Hodge had been home prior to his arrest," that the officers were told that Hodge had been seen early in the morning, that the officers "entered Hodge's premises prior to obtaining the search warrant," and that the officers "misrepresented to [Hodge's neighbor] that Hodge's Mazda Protege had been stolen." Appellee's Brief at 18. The fact that officers traveled to Hodge's residence was disclosed in the affidavit. Failure to disclose the remaining facts does not render the affidavit misleading.

Nor do any of the undisclosed facts undermine the magistrate judge's finding of probable cause. First, a reviewing court "should focus not on what information an affidavit does not include [which may lead to improper *de novo* review], but rather on the information it does contain." *Conley,* 4 F.3d at 1208. Second, we do not agree with Hodge that his neighbor's statement that she saw him at home "early in the morning" would have undermined the showing of probable cause. Since the arrest occurred at about mid-day, the lapse of time between Hodge's spotting by his neighbor and his arrest was not great. By showing that Hodge had been at home at most just a few hours before the arrest, the neighbor's statement might actually have bolstered the showing of probable cause. Third, we do not agree with Hodge that the record shows that the officers entered his house before the warrant was issued. Hodge relies on his neighbor's affidavit. See App. at 176–77. In that affidavit, the neighbor first stated that the officers "approached" her and that, "[w]hile talking to the officers, I observed that they had made entry on to the premises and were looking around." *Id.* Two sentences later, she stated: "At approximately 3:00 p.m. the officers went into the house and began a search." *Id.* at 177. By far the most reasonable reading of the affidavit is that the officers' initial entry onto the "premises" consisted of their entering the property surrounding the house and that they did not actually enter the house until approximately 3:00 p.m., after the warrant had been issued. The neighbor did not testify at the suppression hearing, and no other witness testified that the officers illegally entered the house. Moreover, it is apparent that none of the facts recited in the affidavit in support of the showing of probable cause were derived from an illegal entry into the house. Thus, the reference in the neighbor's affidavit to the officers' initial entry onto the premises seems entirely inconsequential for present purposes.

As our probable cause analysis has already shown, Abraham's affidavit "was not a 'bare bones' document" but contained sufficient indicia of probable cause to support a magistrate judge's finding of probable cause. *Loy*, 191 F.3d at 369. At a minimum, the affidavit was not clearly lacking in indicia of probable cause, but presented a close call. Once the magistrate judge made that call, it was objectively reasonable for the officers to rely on it. *See Williams*, 3 F.3d at 74.

The officers' reliance on the warrant is further justified by the state of Circuit law at the time in question. As recently as July 2000, our Court, in United States v. Whitner, had declined to "decide whether the fact that [the defendant] appear[ed] to be a drug dealer [was] sufficient under the circumstances of [that] case to conclude that he would be likely to store evidence of his drug dealing at his residence." *Whitner*, 219 F.3d at 298; *see also Jones*, 994 F.2d at 1056 (declining "to decide whether in every case the fact that a suspect committed a crime involving cash and/or a gun automatically provides a magistrate [judge] with enough information to approve a search of a suspect's home"). As a result, even assuming error, "the officers could not be expected to know that the magistrate judge made an erroneous probable cause determination" due to insufficient evidence connecting Hodge's house to drug dealing. *Loy*, 191 F.3d at 368–69. Indeed, the magistrate judge himself could not know whether this Court would ultimately agree with his determination given the unsettled jurisprudence governing cases of this type.

"When judgment calls of this kind are required," officers should be able to rely on the magistrate judge's determination of the law. *Williams*, 3 F.3d at 74. Here the magistrate judge determined that the affidavit established probable cause.

■ Hodge nonetheless seeks to defeat a finding of reasonable reliance by arguing that Abraham knew that the affidavit was insufficient. Hodge derives this argument from the chain of events following his arrest. After the arrest, Abraham and other officers drove to Hodge's home with Hodge's car, entered the premises, told a neighbor "that the car was stolen," and were told by the neighbor "that she had seen [Hodge] early in the morning feeding the dogs." Appellee's Brief at 7. Hodge argues that Abraham went to Hodge's home to acquire additional evidence, because Abraham allegedly knew that Hodge's arrest combined with Abraham's own opinions regarding the storage of drug-related evidence would be insufficient to establish probable cause. While at the home, the officers not only failed to obtain information establishing a nexus to the home, but learned that Hodge had not been home since early morning. Nevertheless, Hodge contends that Abraham applied for a search warrant and substituted his opinion for the missing factual nexus. Hodge thus suggests that Abraham knew that probable cause was lacking and could not reasonably rely on the warrant.

■ Hodge's argument is unpersuasive. Abraham's subjective belief regarding the sufficiency of the evidence is irrelevant. The Supreme Court has emphasized that the good faith exception requires objectively, not subjectively, reasonable conduct. *Leon*, 468 U.S. at 919–20 & n. 20, 922 & n. 23, 104 S.Ct. 3405. Moreover, even if subjective belief were relevant, the fact that officers went to Hodge's house, or that they sought additional information, does not show that they knew that their affidavit would be deficient. Instead, the officers appear to have gone to Hodge's suspected residence for the legitimate purpose of confirming that it was indeed Hodge's home.

Having confirmed the location of Hodge's residence, the officers properly entrusted their evidence to a magistrate judge to assess probable cause. *See id.* at 921, 104 S.Ct. 3405 ("It is the magistrate[ judge's] responsibility to determine whether the officer's allegations establish probable cause...."). They then relied on the magistrate judge's determination and executed the search. The officers' reliance on the search warrant was objectively reasonable, regardless of their supposed subjective belief. As a result, the good faith exception applies, rendering the evidence seized during the search of Hodge's home admissible.

### IV.

Because the magistrate judge had a substantial basis for finding probable cause, and because the officers' reliance on the warrant was objectively reasonable, the evidence seized during the search of Hodge's home is admissible. The order suppressing that evidence is therefore reversed, and the case remanded for further proceedings consistent with this opinion.