

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2008

# USA v. Carter

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4021

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Carter" (2008). *2008 Decisions.* Paper 1591.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1591

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4021
_____

UNITED STATES OF AMERICA

v.

RAKIEM CARTER,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00601-1)
District Judge:  Honorable John R. Padova

_____

Argued January 10, 2008
Before:  FISHER, HARDIMAN and STAPLETON, *Circuit Judges*.

(Filed: February 15, 2008)

Mark E. Cedrone (Argued)
Cedrone & Janove
150 South Independence Mall West
Suite 940, Public Ledger Building
6th and Chestnut Streets
Philadelphia, PA  19106
        *Attorney for Appellant*

Maria M. Carrillo (Argued)
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
        *Attorney for Appellee*

FISHER, *Circuit Judge*.

Rakiem Carter was convicted of (1) conspiracy to distribute crack cocaine, (2) possession with intent to distribute more than five grams of cocaine base and aiding and abetting, and (3) possession of a firearm in furtherance of a drug trafficking crime and aiding and abetting. He appeals the District Court's judgment, arguing that physical evidence should have been suppressed and that there was insufficient evidence to convict him of possession of a firearm in furtherance of a drug trafficking crime. For the reasons that follow, we will affirm.

## I.

Because we write exclusively for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts necessary to our analysis.

In August 2004, Officer Henry of the Philadelphia Police Department Narcotic Field Unit participated in an investigation in the 2600 block of North 30th Street. That investigation resulted in the arrest of Rakiem Carter. The police recovered marijuana from Carter's person and more drugs from a duffel bag that was on the porch of his

residence at 2614 North 30th Street. The record does not reveal what happened after the arrest.

On December 2, 2004, Officer Henry conducted another investigation in the 2600 block of North 30th Street, and as the investigation unfolded, he began to specifically target Carter's residence. From an unmarked police vehicle, Officer Henry observed Maurice Cunningham, who was on the sidewalk in front of Carter's residence, participate in three transactions that appeared to be drug sales. Individuals approached Cunningham and gave him money, and he gave them small items from a plastic baggie.

During this time period, police observed that Carter exited the residence, spoke with Cunningham, walked away northbound, and returned carrying a green book bag. Carter again spoke with Cunningham, then walked up the steps and into the house carrying the bag.

Another transaction took place between Cunningham and an individual in a silver BMW. After the BMW drove away, the driver was arrested. Pink-capped vials containing crack cocaine were recovered from the driver's person and from the car.

Officer Henry decided to attempt a controlled buy through a confidential informant. Shortly afterward, police observed Cunningham on the porch of 2614 North 30th Street with two other men. The three men then entered the house. When the confidential informant arrived, he went up the steps and knocked on the door. Almost immediately, the informant jumped off the porch and headed quickly up the street,

pursued by Cunningham, Carter, and one or two other men who had all come out of the house. Carter yelled at the informant, "Don't you ever knock on my fucking door. You ain't the fuck from around here, you know that."

Cunningham, Carter, and the others went back into the house. A few minutes later, police observed that a man came out of the house and walked away while looking up and down the street and talking on a mobile telephone. Immediately after this individual ended his call, Cunningham and Carter came out of the house. Carter was carrying the green book bag and holding a key. After Cunningham and Carter walked around the corner, the police lost sight of them. A few moments later, the police saw Cunningham and Carter standing beside a Nissan Maxima with its trunk open. Carter leaned into the trunk, then leaned away and closed the trunk. Cunningham stood on the pavement at the rear of the car.

Cunningham and Carter were arrested as they walked away from the car. Police officers remained on the scene in an unmarked car to guard the Maxima. Unknown individuals twice attempted to gain access to the Maxima, but fled when the officers got out of the unmarked car. A narcotics dog indicated that it detected drugs on all four doors and the trunk, and the police took the Maxima to their headquarters in order to keep it and its contents safe. They obtained a search warrant for the Maxima and found the green book bag in its trunk. Inside the book bag were powder cocaine, a bowl with cocaine residue, scales, bulk marijuana, jars for bottling marijuana, and 153 pink-topped vials of

4

crack cocaine (identical to the vials recovered from the silver BMW). The total net weight of the crack cocaine was 5.761 grams.

Carter and Cunningham were indicted. The District Court denied Carter's pretrial motion to suppress the drugs, gun, and other items found in the green backpack, finding that there was probable cause for Carter's arrest and search. Carter and Cunningham were tried together before a jury. The jury found Carter guilty of the three charges against him, and Carter filed this timely appeal.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

"We review the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found facts." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006). When reviewing a jury verdict for sufficiency of the evidence, we "view[] the evidence in the light most favorable to the government [and] . . . sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Greenidge*, 495 F.3d 85, 100 (3d Cir. 2007) (internal quotation marks and citation omitted).

III.

Carter argues that the District Court erred in denying his pretrial motion to suppress physical evidence (the keys he was holding at the time of his arrest and the contents of the backpack, which included a gun, drugs, and drug paraphernalia). Carter claims that there was no probable cause for the arrest or for the search warrant, so all items seized incident to the arrest, following the arrest, and pursuant to the warrant should have been suppressed.

As we have explained:

> Police have probable cause to arrest if the circumstances are sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it. Probable cause is determined by the totality of the circumstances. We must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest in determining if probable cause existed.

*United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002) (internal quotation marks and citations omitted). Therefore, when deciding whether Carter's arrest was supported by probable cause, we must consider what the police officers knew and the events they observed on the morning of the arrest.

Contrary to Carter's assertion, he was not arrested simply because of his interactions with Cunningham. As Carter points out, mere fraternization with drug dealers does not provide probable cause for arrest. *United States v. Harris*, 482 F.2d

6

1115, 1118 (3d Cir. 1973). However, fraternization in combination with other interrelated factors can provide probable cause. *Id.*

In Carter's case, the facts known and observed by the police allowed them to conclude, based on the totality of the circumstances, that there was probable cause to believe that Carter was engaged in drug trafficking. First, the police knew that Carter had been arrested four months earlier and was found to possess drugs at that time. Carter's prior arrest, by itself, does not provide probable cause, but it is one of the facts that make up the totality of the circumstances. Second, Carter's interaction with Cunningham was ongoing throughout the morning: he spoke with Cunningham as he left his house and as he returned; Cunningham was selling drugs in front of his doorstep; Cunningham stood on his front porch and went into his house; and Cunningham and Carter (together with one or two others) chased away the confidential informant.[1] Third, Cunningham and Carter left the house together shortly after the confidential informant's attempted buy, and they went around the corner and put Carter's book bag in the trunk of a parked car. The time line of events supports an inference that Carter's suspicions had been aroused by the

_____

[1]Carter asserts that his response to the confidential informant is probative of innocence, not guilt. However, we find it at least equally plausible that Carter's actions and remarks showed his involvement in drug dealing. The police could have reasonably concluded that Carter's angry response was due to the fact that the confidential informant was an unknown person, was not to be trusted, and could pose a threat to a drug dealing operation.

confidential informant and that he was concealing the book bag in order to avoid detection of his drug-related activities.

The totality of the circumstances was sufficient to cause the police to conclude that a drug trafficking crime was being committed and that Carter was one of the persons committing it. Therefore, Carter's arrest was based on probable cause, and the District Court did not err when it denied Carter's suppression motion on this ground.

Carter also argues that the Maxima was seized incident to an unlawful arrest, and therefore its contents should have been suppressed. Even if the arrest had been unlawful, this argument would fail, because the Maxima was not seized or searched incident to the arrest.[2] Hours after Carter's arrest, the Maxima was briefly impounded to secure its contents because unknown individuals twice attempted to gain access to it. The car was searched after Carter was long gone from the scene and after the police had obtained a search warrant from a magistrate. Thus, the Maxima was neither seized nor searched incident to the arrest, so evidence in the green book bag need not have been suppressed as the fruit of the poisonous tree.

---

[2]Carter argues that the police seized the Maxima by seizing its keys upon his arrest. However, the seizure of the keys could not have amounted to a seizure of the car, because after the police seized the keys, unknown individuals repeatedly attempted to gain access to the car. It was because the car had not been seized incident to Carter's arrest that the police found it necessary to move the car to headquarters to safeguard its contents. The fact that Carter was carrying Nissan keys when he was arrested strengthened the warrant affidavit by helping to demonstrate that there was probable cause to search the Maxima, but the keys did not provide the only link between Carter and the car, since the police observed him walking toward the car, and a few moments later, closing its trunk.

Carter next asserts that the search warrant for the Maxima was not supported by probable cause. He argues that there was no evidentiary link, or nexus, between the illegal activities and the Maxima.[3]

"A magistrate judge may find probable cause when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). We do not require direct evidence that contraband is in a particular place. *Hodge*, 246 F.3d at 306. "Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." *Id.* at 305 (internal quotation marks and citations omitted).

The warrant affidavit, which is four pages long, contains detailed information about the occurrences on the morning of Carter's arrest. Just as this information was sufficient to provide probable cause to arrest Carter, it, combined with the intervening

---

[3]Carter also asserts that there were factual inaccuracies in the warrant affidavit. We need not address this argument in any detail. First, Carter states that the inaccuracies would take the warrant outside the ambit of the good faith exception, but since the warrant was supported by probable cause, there is no need to invoke the good faith exception. *See United States v. Leon*, 468 U.S. 897, 915 (1984). Second, Carter does not argue or prove – as required by our case law – that the supposed misstatements were the result of bad faith or reckless disregard and that probable cause would have been lacking but for the factual errors. *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993).

9

alert of the police narcotics dog, provided ample basis for the magistrate to determine that there was probable cause to search the Maxima. There was a fair probability, based on the activities of the morning, that the green backpack contained evidence or contraband. The police saw that Carter had the backpack as he approached the Maxima, and that he no longer had the backpack when he closed the Maxima's trunk. Therefore, it was logical to conclude that the backpack was in the car's trunk. The District Court did not err when it found that the warrant was supported by probable cause and denied the suppression motion.

Finally, Carter attacks his conviction for possession of a firearm, arguing that the evidence was insufficient to show that he possessed the gun in the green backpack in furtherance of a drug trafficking crime, as required by 18 U.S.C. § 924(c). We have explained:

> Under § 924(c), the mere presence of a gun is not enough. What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense . . . . In making this determination, the following nonexclusive factors are relevant: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (internal quotation marks and citations omitted).

10

The type of drug activity being conducted was street sales by Cunningham, who was apparently working together with Carter in some fashion. The firearm was accessible to Carter, since he could have easily retrieved it from the backpack if he had encountered any threat. The record does not show whether the gun was stolen and whether Carter possessed it legally, but the gun was loaded when the police recovered it from the backpack. In addition, the gun was in close proximity to drugs, since all of the items were being carried together in the same bag. The time and circumstances under which the gun was found are relevant, since it would have been reasonable for the jury to infer that Carter was concealing the gun and drugs in response to a perceived threat from the confidential informant.

Viewing the evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that Carter's possession of the gun actually furthered a drug trafficking offense and thus met the requirements of 18 U.S.C. § 924.

IV.

For the reasons set forth above, we will affirm the judgment of the District Court.

11