

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2008

# USA v. Rivera-Pagan

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2661

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Rivera-Pagan" (2008). *2008 Decisions.* Paper 1001.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1001

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2661

_____

UNITED STATES OF AMERICA

v.

JIMMY RIVERA-PAGAN,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 06-cr-00592-1)
District Judge: Honorable Eduardo C. Robreno

_____

Submitted Under Third Circuit LAR 34.1(a)
June 5, 2008

Before: AMBRO, CHAGARES and COWEN, <u>Circuit Judges</u>

(Opinion filed: June 19, 2008)

_____

OPINION

_____

<u>AMBRO</u>, <u>Circuit Judge</u>

　　Jimmy Rivera-Pagan pled guilty to conspiracy to possess with intent to distribute

five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, as well as possession

with intent to distribute five kilograms or more of cocaine, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He received a 63-month term of imprisonment and a five-year term of supervised release. He appeals his conviction, contending that the District Court erred in denying a motion to suppress cocaine found in his suitcases because the search warrant was not supported by probable cause. For the reasons explained below, we affirm.[1]

## I.

In September 2006, the Philadelphia office of the Drug Enforcement Agency (DEA) received notice from the DEA office in San Juan, Puerto Rico, that a shipment of cocaine might be arriving at the Philadelphia International Airport. Further communications from the San Juan DEA office named Rivera-Pagan and his two co-defendants, Jose Vegas-Torres[2] and Irving Cabassa-Rivera, as the suspected smugglers. On the basis of the information, Philadelphia DEA agent Merritt Gibson applied for a search warrant.

In the affidavit accompanying the application for a search warrant, Agent Gibson summarized his experience as a DEA agent and detailed the information provided by the

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. "'We review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts.'" *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

[2] Jose Vegas-Torres is also referred to as "Jose Vega" in the record.

San Juan DEA office. Specifically, the affidavit explained that the San Juan office had received information that Rivera-Pagan and his co-defendants had bought, in cash, one-way tickets from the San Juan International Airport to LaGuardia International Airport, with a layover in Philadelphia. Each co-defendant had checked two pieces of luggage, four of which were inspected by airport officials and found to be nearly empty. Prior to their arrival in Philadelphia, these bags were replaced with other bags that contained cocaine. The affidavit explained the DEA's suspicion that bag-handlers at the San Juan Airport were involved in the smuggling operation and had switched the empty bags for bags containing cocaine. Agent Gibson further noted in the affidavit that information received from the San Juan DEA office one week earlier concerning suspected drug smuggling via the Philadelphia International Airport had led to the seizure of 25 kilograms of cocaine and the arrest of the courier.

A Magistrate Judge granted the application for a warrant. The bags were searched at the Philadelphia Airport and found to contain approximately 83 kilograms of cocaine. Rivera-Pagan and his co-defendants were allowed to proceed to LaGuardia with replacement luggage containing sham cocaine. When they tried to claim the luggage at LaGuardia, they were arrested. They were subsequently indicted for the drug crimes.

Before the District Court, Rivera-Pagan moved to suppress the cocaine, arguing that the warrant was not supported by probable cause. After a hearing, the District Court denied the motion. On appeal, Rivera-Pagan renews the probable-cause argument. He further contends that, in the absence of probable cause, the fruits of the search cannot be

3

admitted under the "good faith" exception to the warrant requirement.

## II.

In determining whether probable cause exists, a magistrate judge should look at the totality of the circumstances to determine if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Our duty is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In making this determination, we look only at the materials presented to the magistrate. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).

Rivera-Pagan contends that the affidavit contains mere speculation and fails to allege facts from which a magistrate could conclude that there was a reasonable probability that evidence would be found in the suitcases. We disagree. The affidavit in this case, while it could have included more detail, provides a substantial basis for concluding that probable cause existed. Agent Gibson alleged that he had information from the San Juan DEA office about possible smuggling of cocaine into the Philadelphia International Airport. While Gibson did not state specifically who in the San Juan DEA's office provided the information, it had the indicia of reliability, especially given that the affidavit stated that previous information from the San Juan DEA about a smuggling operation with the same *modus operandi* led to the successful seizure of 25 kilograms of cocaine and arrest of the courier. Gibson further stated that he learned from the San Juan

office that Rivera-Pagan and his co-defendants had purchased their flight tickets in cash and each checked two pieces of luggage, some of which were determined during screening to be nearly empty. Purchasing tickets in cash and checking nearly empty baggage is certainly suspicious behavior.

Finally, Gibson asserted his belief that the nearly empty bags had been switched by bag handlers for luggage containing drugs. While Rivera-Pagan discounts the bag-switching theory as merely a "hunch," Gibson's belief is supported by the fact that the bags checked by Rivera-Pagan and his co-defendants—which were each assigned a unique claim check number—were not the same bags that turned up in Philadelphia, despite the fact that the new set of luggage bore the original claim check tags.[3] On the

---

[3] The affidavit described the initial checked luggage as follows: "Three of the pieces of luggage were gym bags with the word 'Tour' and a red letter 'X.' A fourth piece of luggage was a black roller type suitcase with no distinct identifiers." It further stated that "Jose Vega's luggage was assigned baggage ticket numbers 047821 and 047822. Irving Cabassa's luggage was assigned ticket numbers 047828 and 047829. Jimmy Rivera's luggage was assigned baggage numbers 047797 and 047798." These claim tags, however, were affixed to different bags when the plane landed in Philadelphia. We know this because the application for a search warrant describes the bags as follows:

> Six items of luggage from US AIR flight # 1996, described as follows: (1) Tag # 047797 attached to a gray Travelmate suitcase; (2) Tag # 047798 attached to a black Travelmate suitcase; (3) Tag # 047821 attached to a gray [T]ravelmate suitcase[;] (4) Tag # 047822 attached to a light gray Travelmate suitcase with orange striping; (5) Tag # 047828 . . . attached to a black Travelmate suitcase[;] (6) Tag # 047829 attached to a light gray Travelmate suitcase with orange striping.

The only inference that can be drawn from this information is that someone swapped Rivera and his co-defendants' empty suitcases for suitcases filled with cocaine.

basis of these facts, the Magistrate Judge had a substantial basis for concluding by a "fair probability that contraband or evidence of a crime" would be found in the suitcases.[4] *Gates*, 462 U.S. at 238.  Thus we affirm.

---

[4] Having determined that there existed a substantial basis for finding probable cause, we need not entertain the question of whether the good faith exception to the warrant requirement applies.