**UNITED STATES of America**

v.

**Omar LYONS, Appellant.**

**No. 06–3303.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 20, 2009.

Opinion Filed: July 16, 2009.

Vicki J. Markovitz, Office of United States Attorney, Philadelphia, PA, for United States of America.

Paul J. Hetznecker, Philadelphia, PA, for Appellant.

Before: SCIRICA, Chief Judge, SLOVITER and FISHER, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Chief Judge.

Omar Lyons was convicted by jury of several drug crimes involving the distribution of cocaine base in violation of 21

U.S.C. § 841.[1] He was sentenced to a term of 132 months in prison,[2] ten years of probation, a $400 criminal assessment, and a fine of $1,500. Lyons challenges his conviction on two grounds. He contends the warrant authorizing the search of his home was not supported by probable cause. Accordingly, he claims the evidence found there should have been suppressed. He also contends his appearance before the District Court as a pro se litigant was not preceded by a proper colloquy. As a result, he claims his waiver of his right to counsel was not knowing and voluntary. We will affirm.

I

Before trial, Lyons moved to suppress evidence gathered during a May 27, 2004, search of his home at 2610 Lehigh Avenue in Philadelphia. A warrant, issued by the Pennsylvania Court of Common Pleas, authorized the search, and it was supported by an affidavit of Philadelphia Police Officer Timothy Bogan, a member of the Narcotics Enforcement Team. The affidavit included facts about events on May 24 and May 26, 2004. On May 24th, a few days after receiving a tip that a man named Omar was selling drugs near 26th Street and Lehigh Avenue, Officer Bogan employed an informant to purchase drugs from Lyons at this location. Bogan searched the informant, and finding no drugs, gave him $250 of pre-recorded money to make a purchase. The informant approached a parked green Oldsmobile, in which Lyons sat in the driver's seat, and handed Lyons the money. Officer Bogan and other officers watched as Lyons drove around the corner to 2610 Lehigh Avenue, exited the vehicle, entered the property for approximately one minute, then returned to the vehicle and drove back to the informant. Lyons then handed the informant an object, a bag containing 5.4 grams of cocaine base, and the informant returned to Officer Bogan with the contraband.

A similar sequence of events occurred two days later on May 26, 2004. Officers observed Lyons leave 2610 Lehigh Avenue, get into the green Oldsmobile, and drive to the same block at the corner of 26th Street and Lehigh Avenue. There, the confidential informant approached Lyons and handed him another $250 of pre-recorded buy money. Lyons handed the informant a small object, a plastic bag containing approximately seven grams of cocaine base. The affidavit also stated, based on a review of court records, that Officer Bogan believed 2610 Lehigh Avenue was Lyons's residence and that Lyons had been arrested approximately two weeks earlier, on May 12, for a different drug offense, which had been discovered during a traffic stop.

Executing the warrant for 2610 Lehigh Avenue, officers found Lyons in the residence, shoving plastic bags under the bed. They arrested Lyons and recovered several clear plastic bags with cocaine base, two

1. Lyons was convicted on one count of possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), distribution of more than 5 grams of cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(B), and a second count of distributing more than 5 grams of cocaine base. These convictions related to events occurring on May 24, May 26, and May 27, 2004. Lyons was to be tried separately for offenses related to a May 12, 2004, traffic stop. Prior to this second trial, he pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(2)—he had a firearm in the car—and the government agreed to drop the other charges related to the traffic stop. Lyons does not appeal the validity of the guilty plea.

2. Based on changes to the sentencing guidelines, this term of imprisonment was later reduced by agreement of the parties to 120 months imprisonment.

bags containing numerous vials of cocaine base, packaging paraphernalia, a scale, and several hundred dollars. In total, the police recovered 81 grams of cocaine from the residence. Lyons challenged the sufficiency of the warrant, contending there was not probable cause to search his home. The District Court denied Lyons's motion to suppress.

At the conclusion of the suppression hearing, which took place on January 18, 2006, Lyons's lawyer asked for a continuance, which was granted until January 30. On January 30, Lyons moved for another continuance, and he also moved to dismiss his lawyer and represent himself pro se.[3] Lyons was dissatisfied with his lawyer's representation during the suppression hearing, believing his lawyer did not sufficiently contest the affidavit.[4] The court denied Lyons's motion for a second continuance, and Lyons repeated his request to represent himself pro se. The court cautioned Lyons about representing himself, advising him that he would need to abide by the Federal Rules of Evidence and describing some of the evidentiary challenges Lyons would face during his trial. For example, the court explained to Lyons that he would not be able to ask questions of witnesses without laying a proper foundation. The court also cautioned Lyons in general terms against representing himself pro se, telling Lyons he was about to "launch [himself] off the deck of the ship,

so to speak," and that "[i]t's been said that he who represents himself has a fool for a client." The District Court did not specifically discuss the charges or the penalties Lyons might receive, but during the colloquy, counsel mentioned that Lyons had been considering a change of his plea and had reviewed a plea agreement that morning. That plea agreement contained information detailing the charges against Lyons and the penalties he faced.

Lyons represented himself during his trial with the assistance of standby counsel. The jury found him guilty of the drug counts related to the events in late May—those involving the purchases by the informant on May 24 and 26, and the evidence found in Lyons's home on May 27. Lyons appeals from the judgment.[5]

**II**

Lyons contends the District Court should have suppressed the evidence found in his home at 2610 Lehigh Avenue because there was not probable cause to support the warrant. Specifically, he notes there was not direct evidence of drugs in the home—no officer observed drugs on his person when he exited the home on May 24—and the May 26 drug deal took place without Lyons returning to the residence.[6] Probable cause does not require such direct evidence, however, but

3. Lyons filed a written motion on January 27, 2006, and he renewed his motion orally on January 30, 2006.

4. Lyons believed his attorney did not adequately question the affiant's ability to perceive, from a distance, an exchange of drugs for money. The court permitted Lyons to testify before trial, supplementing the record from the suppression hearing. After hearing Lyons, the court found that the new testimony did not alter the validity of the warrant or the admissibility of the evidence found in Lyons's home.

5. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction over the appeal under 28 U.S.C. § 1291.

6. We review the issuance of the warrant under a deferential standard, and we "must uphold the finding if the affidavit on which it was based provided a substantial basis for finding probable cause." *United States v. Hodge,* 246 F.3d 301, 305 (3d Cir.2001).

may be established by fair inferences. *United States v. Burton*, 288 F.3d 91, 103 (3d Cir.2002). "To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (*quoting Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir.2001) (internal quotation marks omitted).[7]

During the May 24 transaction, Lyons made a one-minute stop into his home immediately after receiving money from a purchaser and immediately before delivering contraband to that purchaser. This conduct provided a substantial basis to infer that drugs were kept in the house. "While we generally accept the common sense proposition that drug dealers often keep evidence of their transactions at home, that inference is much stronger when the home is the first place a drug dealer proceeds following such a transaction." *Burton*, 288 F.3d at 104 (internal citation omitted). A similarly strong inference may be drawn when the dealer stops in his home during the transaction. The fact that Lyons did not return to the house during the May 26th transaction does not, as Lyons contends, undermine or defeat

the inference from the May 24th transaction. Lyons exited the house immediately before the May 26th transaction, which supports the inference that he may have been keeping drugs there. Accordingly, there was a substantial basis to determine that probable cause existed, and the motion to suppress was properly denied.

### III

■ The District Court granted Lyons's request to represent himself pro se at his trial and appointed his attorney to serve as standby counsel. On appeal, Lyons contends his waiver of his right to counsel was not knowing and intelligent. He contends the waiver was inadequate because the judge did not warn him of the charges against him and the punishments he faced during the colloquy.[8]

Under the Sixth Amendment, a defendant has a right to counsel and also a right to refuse counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 812–34, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Jones*, 452 F.3d 223, 228 (3d Cir.2006). By choosing to represent himself, the defendant "relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. Accordingly, the district court must satisfy itself that the defendant's waiver is knowing and intelligent. *Jones*, 452 F.3d at 228; *United States v. Welty,*

---

**7.** "[E]vidence associated with drug dealing needs to be stored somewhere, and ... a dealer will have the opportunity to conceal it in his home.... [A] dealer logically could conclude that his residence is the best, and probably only, location to store items such as records of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs and cash, and large quantities of drugs to be sold." *United*

*States v. Whitner,* 219 F.3d 289, 298 (3d Cir. 2000).

**8.** Our review of a defendant's decision to proceed pro se is plenary, and we must indulge every reasonable presumption against a waiver of counsel. *United States v. Jones,* 452 F.3d 223, 229–30 (3d Cir.2006) (internal quotation marks and citation omitted).

674 F.2d 185, 187 (3d Cir.1982).[9]  And to ensure the waiver is knowing and intelligent, the district court must engage in a "penetrating and comprehensive examination of all the circumstances." *Jones,* 452 F.3d at 228 *(quoting United States v. Peppers,* 302 F.3d 120, 131 (3d Cir.2002)).  A defendant should be aware "both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful." *Welty,* 674 F.2d at 188.

We stated in *Jones* that "[a] complete, on-the-record colloquy with the defendant, one that assures he understands all the risks of proceeding without an attorney, at the time he makes that choice, is in our view a significantly better way of protecting the right to counsel" than relying on other evidence that would allow the ascription of the relevant knowledge to the defendant.  452 F.3d at 232.  We have also explained, however, that there is "no talismanic formula for the district court's inquiry," *id.* at 229 *(quoting Peppers,* 302 F.3d at 135), and we have looked beyond the record of the colloquy, for example in *United States v. McFadden,* 630 F.2d 963 (3d Cir.1980).  There, the defendant was advised of the nature of the crimes and the possible punishments at his initial appearance, several months before he began representing himself.  630 F.2d at 965, 972 & n. 15.  Although this information was not communicated at the hearing in which McFadden asked to represent himself, McFadden's waiver of counsel was knowing and intelligent.

In this case, the District Court conducted an on-the-record colloquy with Lyons, warning him and advising him of the perils of representing himself.  Although the judge did not himself warn Lyons of the charges and punishments Lyons faced, there is no dispute that Lyons was aware, as a factual matter, of this information when he chose to represent himself.  He had reviewed a plea agreement the morning of the colloquy, alerting him to the nature of the charges and the possible punishments.  Lyons's involvement in the plea negotiations was nearly contemporaneous with his request to represent himself.  Whatever amount of time passed—a few hours at most—was far less than in *McFadden.*  There, the defendant's waiver of the right to counsel was knowing and intelligent despite the passing of several months between being informed of the charges and punishments and his request to represent himself.  *Id.*  Lyons's own counsel represented to the court that his client reviewed the plea agreement.  Lyons's waiver of his right to counsel was knowing and intelligent, and under the facts in this case, the District Court satisfied its obligation.

## IV

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

---

9.  The defendant's waiver of counsel must be made with an understanding of the "dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (internal quotation marks omitted).