**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3059
_____

UNITED STATES OF AMERICA

v.

ANDRE DWAYNE RUFFIN,
            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-13-cr-00138-001)
District Judge: Hon. Terrence F. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
October 6, 2016
_____

Before: SHWARTZ, COWEN, and ROTH, Circuit Judges.

(Filed:  December 2, 2016)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

In the course of a murder investigation, law enforcement obtained a search warrant to collect video footage from surveillance cameras mounted at Andre Dwayne Ruffin's home to investigate Ruffin's whereabouts at the time of the murder. While at Ruffin's home to execute the warrant, police discovered two firearms in plain view. Ruffin was subsequently charged with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Ruffin moved to suppress this evidence on the grounds that the information supporting the warrant for the surveillance footage was stale and that the officers' search exceeded the scope of their protective sweep. The District Court rejected Ruffin's arguments and denied the motion. We will affirm.

I

Andrew Ruffin and Leicia Jackson shared a home located at 704 East 14th Avenue in Homestead, Pennsylvania. Title to the home was in Leicia Jackson's name. After Leicia passed away in 2012, Ruffin and Leicia's mother, Loretta Jackson, became embroiled in a probate dispute over ownership of the property. On April 11, 2013, one day before a scheduled probate hearing, Loretta was shot and killed. On April 12, a law enforcement officer went to 704 East 14th to speak with Ruffin and left a business card with Ruffin's girlfriend with instructions for Ruffin to call. The officer noticed multiple video surveillance cameras mounted on the exterior of the residence.

On April 15, Ruffin went to police headquarters and provided a statement in which he claimed that he and his girlfriend did not leave 704 East 14th the night of April 11. Upon learning about the video surveillance system at Ruffin's home, and aware of Ruffin's claim that he was home the night of the murder, Detective Michael Feeney, who

2

has extensive experience with extraction, preservation, and analysis of video data, suggested that the officers "obtain a search warrant for the data contained on those devices, as it may either . . . corroborate [Ruffin's] alibi or disprove [it]." App. 46. Feeney then obtained information about the locations of the six cameras and prepared an affidavit to obtain a search warrant. The affidavit described his colleagues' observation of the six-camera setup and set forth his own experience that similar surveillance systems usually include a recording component for later review of footage. Based on the affidavit, a judge issued a search warrant on April 22 for "[a]ny and all VIDEO RECORDING SYSTEMS . . . and any and all ELECTRONIC DEVICES CAPABLE OF RECORDING VIDEO." Supp. App. 26.

While some of the officers traveled to 704 East 14th to execute the warrant, Feeney stopped Ruffin in a vehicle in the vicinity of the home. Ruffin told Feeney there was no one in the house. However, when the other officers knocked on the door, Ruffin's girlfriend appeared. As a result, the officers "performed a safety sweep of the residence to verify that there were no additional person[s] contained inside the residence." App. 49.

During the sweep, an officer saw what he "recognized as a handgun in a holster" in the open drawer of a dresser located in an upstairs bedroom. App. 93-94. In another bedroom, the officer observed an open gun "vault," in which he saw what he "recognized []as some type of AR-15 M4 variant." App. 98-99. Although the purpose of the sweep was to clear the house of any hidden individuals, the officer explained that he saw the guns because "[y]ou can't select what you see when you go into a room." App. 118.

3

Based on these observations, the officers obtained a second warrant to seize the firearms. Ruffin was charged with a violation of § 922(g)(1), and moved to suppress the evidence of the firearms on the grounds that (1) the information in the warrant was stale, and thus probable cause for the search was lacking, and (2) the officer exceeded the scope of the protective sweep by looking in spaces incapable of concealing a person.

At the suppression hearing, Detective Feeney testified that he sought to move quickly once he thought of obtaining a search warrant for the surveillance recording system at Ruffin's house because he understood the "possibility that the information could be . . . easily disposed of," App. 61, and noted that such a "system has the potential to overwrite data," App. 62. At the time he sought the warrant, he did not know whether Ruffin's cameras were operational or fake, were connected to an analog or digital system, recorded or streamed a live feed, or had been tampered with since the date of the murder. He also did not mention in his affidavit the possible temporary nature of the evidence because he believed "[i]f that warrant was granted . . . the [temporal] problem would be solved." App. 63.

The District Court denied Ruffin's motion and Ruffin proceeded to trial, where a jury convicted him of being a felon in possession. Ruffin was sentenced to 300 months' imprisonment. Ruffin appeals the denial of his motion to suppress,[1] arguing, among other things, that the information in the warrant was stale.[2]

---

[1] Ruffin's notice of appeal indicated that he sought to appeal the judgment entered by the District Court. His opening brief raised a challenge only to the District Court's order denying his motion to suppress; nowhere did he challenge his sentence. Ruffin now seeks a partial remand to allow the District Court to consider the impact of Mathis v.

Where, as here, "a district court, in reviewing a magistrate's determination of probable cause, bases its probable cause ruling on facts contained in an affidavit, we exercise plenary review over the district court's decision." United States v. Conley, 4 F.3d 1200, 1204 (3d Cir. 1993). Thus, applying the same standard as the District Court, we must determine whether "the [issuing] judge had a substantial basis for concluding that probable cause existed to uphold the warrant." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (internal quotation marks and citations omitted). Our inquiry is confined "to the facts that were before the [issuing] judge, i.e., the affidavit," and we do not "consider information from other portions of the record." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (internal quotation marks and citation omitted). We thus review the affidavit to determine whether the issuing judge had a "substantial basis" for concluding that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). This, of

---

United States, 136 S. Ct. 2243 (2016), on his sentence. In his motion for remand, Ruffin suggests that he needs an "evidentiary hearing" to determine whether the District Court should apply the categorical or modified categorical approach for deciding whether his prior convictions qualify as predicate offenses under the Armed Career Criminal Act. The District Court already engaged in that analysis, and Ruffin did not appeal its conclusions. His motion therefore essentially seeks an opportunity to reargue an issue the District Court decided and which he declined to raise on appeal. This is not a proper use of the remand procedure, and for that reason, we will deny his motion.

[2] Since the officers were at Ruffin's home pursuant to a valid search warrant, we need not reach his argument that the officers' "protective sweep" of the premises was unreasonable and unjustified. The "protective sweep" rule is an exception to the Fourth Amendment's warrant requirement. See Maryland v. Buie, 494 U.S. 325, 327 (1990). The officers were not acting under an exception to the warrant requirement.

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

course, contemplates that the judge was presented with a sufficient basis to believe that the items to be seized were still on the premises.

Ruffin argues that the staleness of the facts in the affidavit negated probable cause and, concomitantly, the validity of the warrant. Dated or "stale" information "may have little value in showing that contraband or evidence is still likely to be found in the place for which the warrant is sought." United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997) (citation omitted). We have previously identified several factors to consider in making a staleness determination, including the "[a]ge of the information supporting a warrant application," "the nature of the crime," and "the type of evidence" sought. United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993) (citation omitted) (holding months-old information supported a warrant to search residence for child pornography, noting law enforcement agent's opinion that pedophiles rarely dispose of such material).[4]

Here, less than two weeks lapsed between Loretta Jackson's murder and the issuance of the warrant. Thus, the investigation was at an early phase. Moreover, the warrant sought evidence to verify Ruffin's alibi. The surveillance footage, which may have depicted Ruffin's movements (or lack thereof) on the night of the murder, could

---

[4] "Age alone . . . does not determine staleness." Harvey, 2 F.3d at 1322 (probable cause determination "is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant"). On the intersection between the passage of time and technology, we have noted that computers have "long memor[ies]." United States v. Vosburgh, 602 F.3d 512, 529 (3d Cir. 2010) (alteration in original) (internal quotation marks and citation omitted) (finding probable cause to search computer for child pornography was not stale after four-month gap, because evidence shows that individuals tend to keep child pornography images and thus the "passage of weeks or months here is less important than it might be in a case involving more fungible or ephemeral evidence, such as small quantities of drugs or stolen music").

6

help to accomplish this goal. The six cameras mounted on the exterior of Ruffin's home suggested a sophisticated surveillance system was in place, and Feeney's probable cause affidavit provided the issuing judge with a basis to conclude that recordings from the system may be located in the home. Feeney explained that:

> [I]n my training and experience dealing with surveillance video and multiple recoveries of video admitted into evidence . . . the videos have usually all been recovered and stored within a recording device. It has been my experience that multi-camera systems are recorded as it would be difficult for a person to watch video from each camera. As such video is usually recorded digitally onto a [digital video recorder] and stored for subsequent review.

Supp. App. 28. From this statement, it was reasonable for the issuing judge to infer that the camera system at 704 East 14th was programmed to record and store images of activity outside the premises for review at a later time. Thus, "there [was] a fair probability that" the type of evidence sought "[would] be found" in Ruffin's home. Gates, 462 U.S. at 238.

Although it was possible that Ruffin could have erased any video footage, or that the system would automatically delete or overwrite footage after a certain period of time, Ruffin provides no basis for engaging in such speculation. Nor did Ruffin present any evidence at the suppression hearing that could have led the District Court to discount the issuing judge's probable cause determination that recorded footage was likely to be found in Ruffin's home.

Accordingly, the District Court correctly determined that the information Detective Feeney supplied in his probable cause affidavit was not stale. There was a "fair probability" that video surveillance footage existed in Ruffin's home that could shed light

7

on his alibi.  The information in the affidavit therefore provided the issuing judge with a

"substantial basis" for concluding that probable cause existed to issue the warrant.

## III

For the foregoing reasons, we will affirm the District Court's order denying

Ruffin's motion to suppress.