**UNITED STATES of America**

v.

**Donald DOUGHERTY.**

**Criminal Action No. 07–361.**

United States District Court,
E.D. Pennsylvania.

April 2, 2008.

Anita D. Eve, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. BACKGROUND

Defendant Donald Dougherty is charged in a 100–count indictment with various offenses relating to his operation of Dougherty Electric, Inc., a corporation of which

he is the sole owner. The offenses arise primarily from Dougherty's alleged orchestration of a cash-payroll scheme at Dougherty Electric, through which he allegedly embezzled monies that otherwise would have been contributed to employee benefit plans and evaded payment of federal payroll taxes. Dougherty is also charged with falsely designating personal expenses as business deductions on his income tax returns, making unlawful payments to a union official, health-care fraud, and bribery of a bank official.

In January 2006, agents from the Federal Bureau of Investigation, the Internal Revenue Service, and the Department of Labor who were investigating Dougherty sought to conduct a search of the premises at 123 Pierce Street in Philadelphia, Pennsylvania. On 123 Pierce Street stands a three-story red brick building that housed not only Dougherty's personal residence, but also the headquarters of Dougherty Electric. In an effort to obtain a search warrant, FBI Special Agent Kathleen O'Hanlon executed an affidavit seeking to search "the premises located at 123 Pierce Street, Philadelphia, Pennsylvania, 19148[;][t]he primary residence and business location of DONALD DOUGHERTY/DOUGHERTY ELECTRIC, INC." Deft.'s Mot. to Suppress, Ex. 2 [hereinafter "Affidavit"]. On January 27, 2006, Magistrate Judge M. Faith Angell approved the issuance of a warrant to search 123 Pierce Street, finding probable cause

that evidence of commission of a crime would be found therein. *See id.* Ex. 1.

## A. *The January 27, 2006 Warrant*

The warrant describes the premises to be searched as "123 Pierce Street, Philadelphia PA 19148," and supplies the structural details of the premises, along with photographic images. *Id.* at 1 & Attachment A.[1] The warrant also includes an extensive description of the items to be seized, providing 24 categories of documentary items, and 7 categories of computers and related items. *Id.* Attachment B.

The affidavit states that O'Hanlon is an FBI Special Agent with over 20 years of experience who is investigating Dougherty, "owner/operator" of Dougherty Electric for, inter alia, "theft or embezzlement from an employee benefit fund," "making unlawful payments to a union official," "utilizing [company] monies for personal use and taking business deductions, and, thereby evading income taxes," and "filing false income tax returns." *Id.* ¶ 2. The bases for the allegations include personal observations, subpoenaed records, interviews with confidential informants and cooperating witnesses, and physical and electronic surveillance.

The affidavit avers that Dougherty Electric is an S Corporation[2] solely owned by Dougherty and operated from his home at 123 Pierce Street. *Id.* ¶ 4. In support of this averment, the affidavit

---

1. Although the warrant itself does not contain any particularized information, the warrant incorporates by reference Special Agent O'Hanlon's affidavit, which includes a detailed description of the places to be searched and items to be seized. *See United States v. Johnson,* 690 F.2d 60, 64 (3d Cir.1982) ("When a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant.").

2. A corporation under chapter S of the Internal Revenue Code, or S Corporation, is generally exempt from federal income tax, and instead passes through its profits to shareholders, each of whom pays taxes on his share of those profits on his Form 1040 at individual tax rates. *See* 26 U.S.C. §§ 1363, 1366.

states that Dougherty allegedly "relocated the operations of [Dougherty Electric] from its former location at 142–50 Morris Street, Philadelphia, PA to the basement of [Dougherty's] residence at 123 Pierce Street," as evidenced by information from a cooperating witness and surveillance of persons moving office furniture and file storage from the Morris Street address to the Pierce Street address. *Id.* ¶ 6. In addition, a confidential informant, alleged to be accurate and reliable, stated that Dougherty "is operating his business from his home." *Id.* The affidavit concludes that there is "probable cause to believe that [Dougherty] is a sole proprietor, conducting personal and business matters at his residence at 123 Pierce Street, Philadelphia, PA." *Id.*

The affidavit goes on to connect the premises at 123 Pierce Street to the offenses alleged. With regard to the cash-payroll scheme, the affidavit avers that an officer of Dougherty Electric made a large cash withdrawal from an account that had been regularly drawn upon in large amounts, brought the cash to "the vicinity of 123 Pierce Street," and "entered [Dougherty's] residence." *Id.* ¶ 15. Additionally, after describing at length the various charges of tax evasion (cash-payroll scheme) and filing false tax returns (improper business deduction of personal expenses), the affidavit states that "the items purchased with the monies from [Dougherty Electric]'s general business account and/or evidence pertaining to the transactions may be found at the residence of [Dougherty] at 123 Pierce Street, Philadelphia, PA, and in the basement of the residence." *Id.* ¶ 45. The affidavit also states that "individuals and businesses typically maintain books and records where they are readily available, i.e., at their homes and places of business" and "where the individual has access to a computer." *Id.* ¶ 46.

### B. *Execution of the Warrant*

On January 28, 2006, Special Agent O'Hanlon and a team of agents executed the warrant. The agents conducted an extensive search of the premises at 123 Pierce Street, beginning in the basement and proceeding upwards. The search of the basement revealed the operations center of Dougherty Electric, including files, computers, and office equipment. The search of the remainder of the building revealed another office adjacent to Dougherty's master bedroom, which also contained files relating to Dougherty Electric.

In addition to the business records of Dougherty Electric, the agents searched throughout the home for certain of Dougherty's personal items. For instance, because Dougherty is alleged to have improperly characterized home renovation expenses as business deductions, the team searched for evidence of these renovations, which included furniture, countertops, cabinets, and flooring. In addition, Dougherty is alleged to have purchased personal goods and improperly deducted the expenses as business expenses. The team searched for evidence of these purchases as well, which included jewelry, electronics, sports equipment, and the accompanying receipts.

The search resulted in the seizure of 29 boxes of documents and other materials, and 8 computers and related items. The search team took photographs of all rooms that were searched.

### C. *Procedural Posture*

Dougherty now moves to suppress all evidence seized pursuant to the January 27, 2006 warrant, arguing that the warrant lacked particularity and the search exceeded the scope authorized by the warrant. After the parties each submitted written memoranda to the Court, a suppression hearing was held on March 27, 2008. At

the hearing, the parties presented oral argument. In addition, the parties were afforded the opportunity to present evidence, and testimony was elicited from Special Agent O'Hanlon.

## II. PARTICULARITY OF THE WARRANT

### A. *The Particularity Requirement*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Const. amend IV.

■ The "particularity" requirement is designed to prevent the issuance of "general warrants" that authorize "a general, exploratory rummaging in a person's belongings." *United States v. $92,422.57*, 307 F.3d 137, 149 (3d Cir.2002) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). Evidence obtained pursuant to a warrant that does not comply with the Fourth Amendment's particularity requirement may be excluded from evidence at trial under the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### B. *The Good Faith Exception to the Exclusionary Rule*

■ Even where a warrant violates the Fourth Amendment's particularity requirement, suppression of evidence pursuant to the exclusionary rule "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *$92,422.57*, 307 F.3d 137 at 145 (quotation omitted) (noting that "there is nothing to deter" when an officer acts in good faith reliance on a warrant).[3]

The relevant inquiry in determining good faith reliance is " 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization.' " *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir.2001) (alteration omitted) (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405). In most cases, the good faith showing is not a difficult one for the Government to make: "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Id.* at 307–08.

■ In four "narrow situations," however, the good faith exception to the exclusionary rule will not apply:

(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;

(3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

(4) when the warrant was so facially deficient that it failed to particularize

---

3. If a motion to suppress "does not present a Fourth Amendment argument that should be decided in order to provide instruction to law enforcement or to magistrate judges," the Court may "turn 'immediately to a consideration of the officers' good faith.' " *$92,422.57*, 307 F.3d at 145 (quoting *Leon*, 468 U.S. at 925, 104 S.Ct. 3405). The parties agree that the issues presented here do not involve such arguments. *Accord id.* (holding that "probable cause and particularity arguments" need not be decided in order to provide instruction to law enforcement or magistrate judges (citing *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir.1992))). Thus, the Court addresses the good faith exception before addressing Dougherty's arguments on their merits.

the place to be searched or the things to be seized.

*Id.* at 146 (quotation omitted).

### C. *Discussion*

Dougherty argues that the January 27, 2006 warrant was facially deficient in its failure to particularize the place to be searched and things to be seized, and that it was based on an affidavit fatally lacking in indicia of probable cause.

■ The questions of whether the particularity of a warrant is facially deficient and whether a warrant lacks indicia of probable cause are determined by using an objective standard. *See Hodge,* 246 F.3d at 309 ("[An agent's] subjective belief regarding the sufficiency of the evidence is irrelevant. The Supreme Court has emphasized that the good faith exception requires objectively, not subjectively, reasonable conduct.").

### 1. *Particularity*

Dougherty argues that the warrant is facially deficient because it failed to particularize the things to be seized by authorizing a limitless search of virtually every item in his home and office. Dougherty is incorrect.

■ "The Fourth Amendment does not prohibit searches for long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described." *$92,422.57,* 307 F.3d 137 at 148. Moreover, when an investigation concerns a complex series of offenses, the Government is allowed a degree of latitude in defining the categories of items to be searched. *See United States v. Yusuf,* 461 F.3d 374, 395 (3d Cir.2006) ("[T]he govern-

ment is to be given more flexibility regarding the items to be searched when the criminal activity deals with complex financial transactions."); *United States v. Am. Investors of Pittsburgh, Inc.,* 879 F.2d 1087, 1106 (3d Cir.1989) ("Given the complex nature of a money-laundering enterprise, we cannot say that the categories over described the extent of the evidence sought to be seized.").

In *American Investors,* the Third Circuit upheld a warrant authorizing the search of "twenty-three categories of specifically delineated records and the seizure of other documents and items considered to be fruits, instrumentalities and/or evidence of criminal activity." 879 F.2d at 1093. The Court upheld the warrant against a particularity challenge, holding that, "given the range of information required to unravel the [money] laundering scheme and the extent of participation by the parties, the warrant was as specific as the circumstances allow." *Id.* at 1106; *see also Yusuf,* 461 F.3d at 379 ("[T]he warrant does not fail as an unconstitutional general warrant. The listing of the corporate items to be searched in the warrant application was not unconstitutionally overbroad, particularly considering this Court's repeated pronouncements to give greater flexibility in making the probable cause determination in the context of large-scale, document-intensive corporate offenses.").

Dougherty relies on *United States v. Leary,* 846 F.2d 592 (10th Cir.1988), in an attempt to distinguish this case from *American Investors.* In *Leary,* the warrant's description of the things to be seized was limited to the following: [4]

---

**4.** In *Leary,* the affidavit accompanying the warrant contained a more particularized description, but the Court held that the affidavit could not cure the warrant's deficiency because it was not incorporated by reference in the warrant or attached the warrant. 846 F.2d at 603. Here, the affidavit is both incorporated by reference and attached to the warrant.

Correspondence, Telex messages, contracts, invoices, purchase orders, shipping documents, payment records, export documents, packing slips, technical data, recorded notations, and other records and communications relating to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act, 22 U.S.C. 2778, and the Export Administration Act of 1979, 50 U.S.C.App. 2410.

*Id.* at 594. The Court held that the warrant was facially deficient because its "absence of any limiting features" meant that it encompassed "virtually every document that one might expect to find in a modern export company's office." *Id.* at 601 n. 15, 602, 609.

■ The warrant in this case is markedly different from the warrant in *Leary.* Instead of a single paragraph with a generic statutory reference appended, the warrant here breaks the items to be seized down into 24 particularized categories of documentary evidence and 7 categories of computer-related evidence. *See* Affidavit, Attachment B.

Dougherty has not pointed to a single paragraph in the list of items seized that is deficient in a manner similar to the generic items listed in *Leary.* To the contrary, each paragraph of the warrant here is highly specific and particularized. Three representative examples are set forth below:

All documents relating to communications concerning International Brotherhood of Electrical Workers ["IBEW"] Local Union 98 Pension Plan ("the Plan") and Collective Bargaining Agreement, including, but not limited to communications concerning the Plan between, or among, [Dougherty Electric] or any of its agents or representatives

and any of the following: any trustee of the Plan, any official of [Dougherty Electric], any plan official, fiduciary, or service provider.

. . .

All records relative to the personal use of any business asset, including cash or its equivalent, of [Dougherty Electric] by [Dougherty], his family, and/or any non-employee.

. . .

Any and all tax returns and supporting tax documentation including Federal, state or local individual and business tax returns, filed and unfiled, all Forms W–2, W–3, W–4 and 1099, filed and unfiled; and any supporting work papers, financial statements, audit/review/compilation reports, summary sheets, and analyses used in the preparation of the individual and business tax returns and Forms W–2, W–3, W–4 and 1099 relating to [Dougherty] and [Dougherty Electric], for the period January 2000 through the present.

Affidavit, Attachment B, ¶¶ 1.B, 1.R, 1.W.

The warrant contains no generic and unspecified references to records that any business might have; rather the categories of items are tailored to specific and relevant aspects of Dougherty Electric's business. Dougherty's argument that the warrant had no limitations on the items to be seized is belied by the specificity of the warrant's language. The warrant was limited in at least three respects: 1) it specifically delineated the type (and sub-type) of document or item sought, 2) it limited the relevant time period from January 2000 to January 27, 2006, and 3) it generally limited the items to those relating to Dougherty, Dougherty Electric, and the IBEW union.[5]

---

**5.** The affidavit alleges that Dougherty made improper payments to a union official; that

union official is referred to in the affidavit as the business manager of IBEW Local 98.

Thus, the January 27, 2006 warrant is distinguishable from the general warrant in *Leary*.[6] Considering the highly complex nature of this case, which was commenced with a 100–count indictment alleging multiple complex financial crimes, the warrant here is more analogous to the particularized warrant in *American Investors*. Accordingly, Dougherty has not shown that the warrant is so facially deficient that it could not have been relied on by a reasonably well-trained officer.

### 2. *Probable Cause*

Dougherty next argues that the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in the existence of probable cause unreasonable. Specifically, Dougherty argues that the affidavit only shows probable cause that business records and similar materials would be found in the basement of the house, which housed the business office of Dougherty Electric, not on the remaining floors of the building.

The Court must examine only the facts that were before the Magistrate Judge, i.e., the affidavit, and give "great deference" to the Magistrate Judge's determination of probable cause. *Hodge*, 246 F.3d at 305 ("The Court need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause." (quotations omitted)). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quotation omitted).

The Magistrate Judge need not have based her finding on "direct evidence linking the place to be searched to the crime":

Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime. A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

*Id.* at 305–06.

■ Here, Special Agent O'Hanlon's affidavit contained ample indicia of probable cause. First, the affidavit referred to *direct* evidence of a nexus between 123 Pierce Street and the cash-payroll scheme: surveillance of a Dougherty Electric employee withdrawing a large quantity of cash from a monitored bank account and entering the "residence" of Dougherty. Affidavit ¶ 15. From this description, it is reasonable to infer that the money that was taken into Dougherty's residence could have been located anywhere in the residence.[7]

The affidavit does state that a cooperating witness indicated that Dougherty Electric was "operating ... out of the basement of his residence." Affidavit ¶ 6. It also provides, however, that a confidential informant, who has always been accurate and reliable, stated more generally that Dougherty "is operating his business from his home." *Id.* Moreover, there is no indication that Dougherty's personal income tax files would be located only in

---

**6.** Dougherty cites two additional cases, both inapposite. *See Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 959 (3d Cir.1984) ("Little doubt ... exists that the warrants issued were sufficiently particular."); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir.1995) (warrant contained "no limitations on which documents within each category could be seized").

**7.** Put differently, it is unreasonable to infer from the language of the affidavit that the money could *only* have been located in the basement of the residence.

the basement office, and it is highly implausible that all evidence of the home improvements and personal goods alleged to have been improperly deducted as business expenses was located in the basement. *See id.* ¶ 29 (listing payments made from Dougherty Electric's bank account to a health club, a jewelry store, a plastic surgery center, a daycare center, and swimming pool builder); *id.* ¶ 37 (listing cancelled checks indicating payments to a furniture store, an electronics retailer, and a fine clothing store, among others).

In addition to these direct links between Dougherty's home and the evidence of the alleged crimes, the affidavit relied on several inferences, all of which were reasonable. Dougherty was the sole owner of an S Corporation,[8] which allegedly operated out of his basement and/or home. From these facts, it is reasonable to infer that many of Dougherty Electric's business records and account books, items which were the subject of the allegedly improper deductions by Dougherty, and receipts and other business records of Dougherty will likely be found not only in the basement, but also in other parts of the residence as well. *Id.* ¶¶ 4, 45–46.[9]

■ Finally, Dougherty argues that the affidavit is based in part on stale evidence. However, if the suspected activity "is of a protracted and continuous nature the passage of time becomes less significant," and

"where the items to be seized are created for the purpose of preservation, as are business records, the passage of time is also less significant." *$92,422.57,* 307 F.3d at 148. Here, the alleged criminal activity is ongoing in nature and many of the items to be seized are not of a transient nature and were created in order to be preserved.

Accordingly, the Magistrate Judge had a substantial basis for determining probable cause in this case.

## III. EXCEEDING THE SCOPE OF THE WARRANT

Dougherty claims that the agents conducting the search exceeded the scope of the warrant. Dougherty argues that the search warrant and its accompanying affidavit only authorized a search of his basement, not his entire house. Therefore, Dougherty contends that the search, which ranged extensively throughout his home, exceeded the scope of the warrant.

■ Evidence seized pursuant to a search that exceeds the scope of an otherwise valid warrant is subject to the exclusionary rule. *See United States v. Coleman,* 805 F.2d 474, 483 (3d Cir.1986) ("To the extent material outside the list was seized, the district court properly determined that that material could be suppressed without requiring the suppression of all documents seized.").

8. Dougherty Electric's status as an S Corporation is relevant because the corporation's compliance with the Internal Revenue Code will be evidenced by the Forms 1040 of its individual shareholders, here, Dougherty. *See supra* note 2.

9. Dougherty argues generally that a higher "level of justification" is required when conducting a search of a home. For this proposition, Dougherty relies on *United States v. Mosley,* which states only that "([t]he level of justification required to support a valid car search is extremely low ... as compared with that required to support a valid home

search."). 454 F.3d 249, 269 (3d Cir.2006). The teachings of *Mosley* are not instructive here. *See id.* (case concerned a vehicle search, not a home search). Dougherty has a reasonable expectation of privacy in his residence, even if he does use it as a home-office. *See United States v. Bli,* 147 F.Supp.2d 734, 741 (E.D.Mich.2001) (holding that defendant had a reasonable expectation of privacy in his farm's business office, which was located on the same premises as his residence). Although this expectation of privacy is a prerequisite to Fourth Amendment protection, it does not heighten the probable cause requirement.

■ The Third Circuit has applied the good faith exception to the exclusionary rule to searches that exceed the scope of a warrant:

> To show a deliberate disregard for the warrant's restrictions, it must be demonstrated that a reasonably well-trained officer would have known that the search was illegal, despite the magistrate's authorization. This is a question of objective reasonableness, rather than subjective good faith.

*Am. Investors,* 879 F.2d at 1107 (citing *Leon,* 468 U.S. at 919 n. 20, 104 S.Ct. 3405). Therefore, as with the particularity requirement discussed above, "the pertinent inquiry is still whether the officers acted reasonably. Phrased another way, we ask whether the officers' suspicions have been aroused that certain documents could not be seized under the warrant." *Id.* at 1107.

Unlike the particularity determination, however, the determination of whether the search exceeded the scope of the warrant requires consideration of evidence outside the four corners of the warrant and affidavit. *See United States v. Fumo,* No. 06–319, 2007 WL 3232112, at *5 (E.D.Pa. Oct. 30, 2007) ("[I]f the seizure exceeded the scope of the warrant, this will be apparent when the evidence offered is compared to the description on the face of the warrant of items to be seized and when defense counsel questions the proponent of the evidence about the circumstances of its seizure."). The determination is an objective one, however, and the subjective intent and knowledge of the agents executing the warrant is immaterial. *See Am. Investors,* 879 F.2d at 1107.

■ Dougherty argues that the warrant only authorized a search of the basement of 123 Pierce Street, and not the remainder of the home. This contention is belied by the warrant, which describes the premises to be searched in detail:

> 123 Pierce Street, Philadelphia PA 19148, is a brick residence, located on the north side of Pierce Street across [sic], at the cross street of Moore Street. The structure is a three story red brick home with a brick wall encompassing the yard, and a sunken two car garage with wooden garage doors.

Affidavit, Attachment A. Nowhere in this description is the scope of the search limited to the basement of Dougherty's home.

Dougherty relies on two cases, both of which undercut his argument. *See Torres v. United States,* 200 F.3d 179 (3d Cir. 1999); *United States v. Am. Investors of Pittsburgh, Inc.,* 879 F.2d 1087 (3d Cir. 1989).

In *Torres,* federal agents searched the home of the defendant, who was suspected of drug trafficking, pursuant to a warrant. 200 F.3d at 181. The warrant authorized a search of "the property known as 3936 N. 5th Street, Philadelphia, PA." *Id.* at 187. The affidavit accompanying the warrant stated that the defendant "stored cocaine in five-gallon cans in the basement of the premises," but also "recited other items the location of which were not expressly limited to any particular portion of the building." *Id.* The defendant challenged the search as having exceeded the scope of the warrant, but the Third Circuit disagreed. The Court reasoned that "a warrant encompasses the authority to search the entire building if the person who is the target of the search has access to or control over the entire premises." *Id.* at 187 (quotation omitted). Because the premises in question was "a traditional two-story home," and not a "multiunit premises with separate areas controlled by separate residents," the Court concluded that "the warrant authorized a search of the entire building." *Id.* at 187–88.

In *American Investors,* federal agents conducted a search, pursuant to a warrant, of the offices of a business suspected of

money laundering. 879 F.2d at 1092–93. The warrant authorized the search of 23 categories of records and the seizure of documents and fruits, instrumentalities, and evidence of criminal activity. *Id.* at 1093. The ten-hour search undertaken by the agents was extensive, resulting in the seizure of large amounts of corporate documents and interrogation of individual employees. *Id.* at 1091, 1104. Rejecting the defendants' argument that the search exceeded the scope of the warrant, the Court held that, "[g]iven the necessarily broad scope of the search involved" in the investigation of a complex money-laundering scheme, "the agents reasonably relied on the magistrate's findings that the affidavit justified the seizure of the wide range of documents." *Id.* at 1107.

This case closely resembles both *Torres* and *American Investors.* The warrant authorized a search of "123 Pierce Street, Philadelphia, PA 19148," a traditional single-family residence over which Dougherty had control. Although the affidavit stated that Dougherty's business was located in the basement of the premises, it also stated more generally that the business was run out of Dougherty's "home," and alleged that other evidence, such as items which were the subject of the allegedly improper deductions by Dougherty, and receipts and other business records of Dougherty, might be found in other parts

of the residence. *See Torres,* 200 F.3d at 187–88. In addition, the warrant in this case authorized an extensive search of over 30 categories of documents and items as part of an investigation of a series of complex financial crimes. *See Am. Investors,* 879 F.2d at 1107.[10]

Moreover, the testimony of Special Agent O'Hanlon at the hearing did not support Dougherty's claim that the search of 123 Pierce Street exceeded the scope of the warrant. Special Agent O'Hanlon testified that the search ranged into private places such as closets, jewelry boxes, drawers, inside kitchen cabinets, and underneath countertops. Searches of these locations was likely to reveal the fine clothes, jewelry, and home improvements that were the subject of the improper deductions alleged in the probable cause affidavit. In addition, searches of these locations were likely to uncover business records, such as the receipts that reflected the purchases of these items and others similar to them. For example, as discussed above, *see supra* Part I.B, Special Agent O'Hanlon's testimony revealed that a private office was found adjacent to Dougherty's master bedroom, which contained business records of Dougherty Electric. Thus, the Court cannot say that an agent who searched these locations on the strength of the January 27, 2006 warrant was acting unreasonably.[11]

---

**10.** A handwritten addition to the affidavit added at the instruction of the Magistrate Judge provides: "If personal materials or information are obtained during the search, the government will not review any materials or information which will or would infringe upon the privacy of [Dougherty, his wife, or others]." Affidavit ¶ 52(d). Dougherty contends that this addition indicates the Magistrate Judge's intent to restrict the scope of the authorized search to business records only. The remainder of the affidavit suggests otherwise. The handwritten addendum is part of paragraph 52, which pertains specifically to "information contained in a computer ... [that] cannot be successfully retrieved and

copied to depict the exact environment in which the data was created at the premises." *Id.* ¶ 52. The restriction in paragraph 52(d) thus concerns only private information contained on seized computers and is consistent with other portions of the warrant that expressly authorize seizure of personal items. *See, e.g.,* Affidavit, Attachment B, ¶¶ L ("All individual ... bank account records...."), Q ("All records relative to the expenditure of any funds, business or personal, for the personal benefit of [Dougherty] or his family.").

**11.** At the hearing, the Government elected to defend the execution of the warrant based on the agents' good faith reliance on the war-

## IV. CONCLUSION

The January 27, 2006 warrant was neither facially deficient in its particularization of the items to be seized, nor fatally lacking in indicia of probable cause. Moreover, the agents acted reasonably in executing the warrant. Accordingly, Defendant's motion to suppress (doc. no. 24) will be denied.

An appropriate order follows.

### *ORDER*

**AND NOW**, this 2nd day of April, 2008, for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Defendant's motion to suppress (doc. no. 24) is **DENIED.**

**AND IT IS SO ORDERED.**

rant. In fact, the Government's argument understates its case. The evidence introduced at the hearing shows not only that the agents reasonably relied on the warrant, but also that the agents' search did not exceed the scope of the warrant.